OPINION
{¶ 1} Appellant, the mother of J.S., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting the motion of the Butler County Children Services Board ("BCCSB") seeking a planned, permanent living arrangement ("PPLA") for J.S.[1] *Page 2 
 {¶ 2} In February 2004, BCCSB filed a complaint alleging that J.S. was an abused and dependent child. The complaint alleged that appellant had been diagnosed with a "delusional disorder, persecutory type," and her thought processes were becoming increasingly disorganized as a result. Appellant accused J.S. of stealing from her home, and awakened him during the night to question him about it. Appellant believed that her neighbors were spying on her, and placed signs in her yard warning others of an alleged thief. Appellant refused to schedule a home visit with BCCSB, and denied a BCCSB caseworker access to the home for an unannounced visit. Appellant's mental health issues were adversely affecting J.S. His grades were suffering, he was not sleeping well, and he demonstrated signs of depression, attention deficit hyperactivity disorder, and early onset dysthymic disorder. He had gained a significant amount of weight and was withdrawn from social activities.
 {¶ 3} The trial court ordered that J.S. be placed under the protective supervision of BCCSB, and remain in appellant's custody. Appellant failed to follow through with BCCSB case plan requirements, including permitting home visits, seeking appropriate mental health treatment, permitting J.S. to have court-ordered visitation with his father, and making sure that J.S. attended counseling. BCCSB consequently filed a motion requesting temporary custody of J.S. In August 2004, with appellant's agreement, BCCSB was granted temporary custody and J.S. was placed in foster care. Appellant was provided weekly, supervised visitation with J.S.
 {¶ 4} In September 2005, BCCSB moved to modify the temporary custody arrangement to a PPLA, citing appellant's significant psychological problems and her failure to address them. A hearing on the motion was held before a magistrate, at which BCCSB presented the testimony of numerous BCCSB caseworkers, mental health providers, and the child's guardian ad litem, all of whom confirmed that appellant's mental health issues adversely affect J.S. The guardian ad litem recommended that the PPLA be granted. The *Page 3 
magistrate also conducted an in camera interview of J.S. Upon considering the evidence, the magistrate granted BCCSB's motion, and appellant filed objections to the decision. The trial court overruled the objections and adopted the magistrate's decision as the court's order. Appellant appeals, raising two assignments of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "THE LOWER COURT ERRED IN GRANTING THE STATE'S MOTION FOR PERMANENT PLANNED LIVING ARRANGEMENT (PPLA) ON THE BASIS THAT APPELLANT CANNOT PROVIDE THE EMOTION [SIC] STABILITY AS A RESULT OF HER DIAGNOSED PSYCHOLOGICAL CONDITION. EMOTIONAL STABILITY IS NOT A LEGALLY RECOGNIZED COMPONENT OF ADEQUATE PARENTAL CARE AS CONTEMPLATED BY THE PPLA STATUTE."
 {¶ 7} A "planned permanent living arrangement" is defined as a placement that gives legal custody to an agency without terminating parental rights and that allows the agency to make an appropriate placement, including foster care or other placement. R.C.2151.011(A)(36); see In re A.B., 110 Ohio St.3d 230, 2006-Ohio-4359. Pursuant to R.C. 2151.353(A)(5), the court can order a planned permanent living arrangement "if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement and if the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child," and, as relevant to the present case, the following exists:
 {¶ 8} "(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of section 2151.414 of the Revised Code, and the child retains a significant and positive relationship with a parent or relative." *Page 4 
 {¶ 9} In this assignment of error, appellant does not challenge the trial court's evidentiary conclusion that her psychological condition renders her unable to adequately provide for J.S.'s psychological and emotional well-being. Rather, appellant argues, as she did in her objections to the trial court, that because her psychological condition does not affect her ability to provide for J.S.'s basic needs, such as food, shelter and physical care, a PPLA is not warranted under the juvenile code. She argues that her lack of "emotional stability" does not prevent her from providing "adequate parental care" as contemplated by statute. She specifically argues that the PPLA statute "centers around a child's care not needs." (Emphasis sic.)
 {¶ 10} We first note that, although appellant has narrowly focused her assignment of error on the trial court's statement that appellant lacks "emotional stability," review of the trial court's decision reveals that it was in fact more broadly based on appellant's unresolved psychological condition and the continuing, adverse impact it would have on J.S.'s emotional and psychological well-being if he were to remain in her care. When viewed in the correct context, appellant's own recitation of the statutory definition of "adequate parental care" contradicts her argument that her inability to provide an emotionally stable environment for J.S. does not support granting the motion for a PPLA.
 {¶ 11} As recited earlier, a PPLA is appropriate when a parent's "significant psychological or emotional" problems prevent the parent from "providing adequate parental care." R.C. 2151.353(5)(b). R.C.2151.011(B) (1 ) states that "`adequate parental care' means the provision by a child's parent or parents, guardian, or custodian of adequate food, clothing, and shelter to ensure the child's health andphysical safety and the provision by a child's parent or parents of specialized services warranted by the child's physical or mentalneeds." (Emphasis added.) The statute specifically refers to the child's mental needs, as well as the child's general health. As noted by the state, the common definition of "health" includes *Page 5 
aspects of both physical and mental soundness. See Webster's Third New International Dictionary (1993), 1043 (defining "health" to mean "the state of being sound in body or mind").
 {¶ 12} Thus, as defined by the legislature, a PPLA is appropriate when a parent's psychological or mental problems prevent the parent from meeting either the physical or mental needs of a child. The legislature's intent in this regard is clear and unambiguous from the "words used in the statute," In re A.B. at ¶ 31, and does not suggest that a PPLA is inappropriate where a parent is able to provide for a child's basic, physical care, while subjecting the child to a psychologically and emotionally damaging environment.
 {¶ 13} We further note that a parent's ability to provide psychological and emotional stability is a relevant factor when considering a permanent custody motion. When considering a permanent custody motion, "the natural parent's present status, with respect to present living conditions, financial resources, maturity and emotional stability, is a critical factor[.]" In the Matter of S.S., Franklin App. No. 05AP-204, 2005-Ohio-4282, ¶ 36. A child's best interest includes "as major components the child's psychological and emotional development."In re Christoper (1977), 54 Ohio App.2d 137, 145-146. More severe than ordering a PPLA, the decision to award permanent custody is often said to be the family law "equivalent to the death penalty." In re Hayes
(1997), 79 Ohio St.3d 46, 48. As a child's emotional well-being is relevant to the determination of a permanent custody motion, it must also be relevant to the determination of adequate parental care when considering a PPLA which keeps the parent-child relationship intact.
 {¶ 14} We do not find error in the trial court's determination that a PPLA is appropriate in the present case based on appellant's unresolved mental health issues which prevent her from adequately providing for J.S.'s emotional and psychological care. Appellant's first assignment of error is overruled.
 {¶ 15} Assignment of Error No. 2: *Page 6 
 {¶ 16} "THE PPLA STATUTE, AS APPLIED TO APPELLANT'S CASE, VIOLATED APPELLANT'S DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE UNITED STATES CONSTITUTION AS THE COURT'S USE OF `EMOTIONAL STABILITY' EXCEEDED THE STATUTORY LIMITATION FOR PPLA. APPELLANT WAS GIVEN NO NOTICE THAT IT COULD SATISFY THE ELEMENT OF `PROVIDING CARE' UNDER THE PPLA STATUTE, AND THE COURT'S DEFINITION `BOOTSTRAPPED' APPELLANT'S CASE BY TREATING SEPARATE AND DISTINCT ELEMENTS MORE INTER-RELATED THAN THE LEGISLATURE INTENDED."
 {¶ 17} Juv.R. 40(E)(3)(d) provides, "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." The waiver under Juv.R. 40(E)(3)(d) "embodies the long-recognized principle that the failure to draw the trial court's attention to possible error, by objection or otherwise, when the error could have been corrected, results in a waiver of the issue for purposes of appeal." In re Etter ( 1998), 134 Ohio App.3d 484,492, citing Goldfuss v. Davidson, 79 Ohio St.3d 116, 121, 1997-Ohio-401. Appellant failed to raise this alleged error before the trial court. Her failure to do so results in a waiver of the issue for purposes of appeal. See In re G. Children, Butler App. No. CA2004-12-300,2005-Ohio-4745, ¶ 4-5; Etter at 492; In re Ebenschweiger, Butler App. No. CA2003-04-080, 2003-Ohio-5990, ¶ 8-9.
 {¶ 18} Judgment affirmed.
BRESSLER, P.J., and POWELL, J., concur.
[1] Although J.S.'s father initially participated in this case, he did not contest BCCSB's motion for a PPLA and is not a party to this appeal. *Page 1