**[Cite as *In re J.D.*, 2017-Ohio-4229.]**

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | |
| J.D., et al. | : | CASE NO.   CA2017-02-002 |
| | : | O P I N I O N<br>6/12/2017 |
| | : | |
| | : | |

APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. AND20150248, AND20150249, AND20150250, and AND20150251

Susan Wollscheid, P.O. Box 841, Washington C.H., Ohio 43160, guardian ad litem

Melissa S. Upthegrove, 254 East Court Street, Washington C.H., Ohio 43160, for appellant, C.D.

Jess C. Weade, Fayette County Prosecuting Attorney, Sean M. Abbott, Fayette County Courthouse, 110 East Court Street, Washington C.H., Ohio 43160, for appellee, Fayette County Children Services

**RINGLAND, J.**

{¶ 1}   Appellant, the biological mother of J.D., E.P., B.D., and C.D. ("Mother"), appeals a decision of the Fayette County Court of Common Pleas, Juvenile Division, granting permanent custody of Mother's children to appellee, the children services division of the Fayette County Department of Job and Family Services ("the agency"). For the reasons

detailed below, we affirm.

{¶ 2} In May 2015, the agency filed complaints alleging that J.D., E.P., B.D., and C.D. ("the children") were neglected and dependent and sought temporary custody. The complaints alleged that Mother was unable to provide for the children's basic needs and that she was abusing drugs. The juvenile court granted temporary custody of the children to the agency. The agency then placed the children with a foster family.

{¶ 3} The court held an evidentiary hearing on the allegations in July 2015. The state dismissed the counts related to neglect but presented evidence on dependency. The evidence showed that Mother had visible track marks on her arm when contacted by agency workers. Mother refused to let the workers inside her home. Mother checked herself into a drug treatment facility and left the children with neighbors. However, the neighbors could not manage the children. The children, who were between five and twelve years old, exhibited behavior indicating that they had been raising themselves. The court noted the fathers of J.D. and E.P failed to appear at the hearing, B.D.'s father was deceased, and that C.D.'s father appeared and admitted to his child's dependency. Following the hearing, the court found that the children were dependent and continued temporary custody with the agency. Mother did not appeal the findings of dependency.

{¶ 4} In July 2015, the agency filed Mother's case plan, which sought to reunify Mother with the children. The plan required Mother to secure counseling for mental health concerns, address her heroin addiction through an inpatient drug treatment program, obtain and maintain stable housing, and attend parenting classes. Mother did not sign the case plan.

{¶ 5} The court held a status hearing in February 2016. The evidence submitted at the hearing indicated that Mother had minimal telephone contact with the agency since the initial removal hearing. Mother had not offered the agency proof of housing. Nor had Mother

shown proof of attending drug counseling or parenting classes. The court noted that Mother had been visiting her children regularly beginning in November 2015 and that the visits went well. The court continued temporary custody with the agency.

{¶ 6} Mother's last visit with the children occurred in February 2016. Mother failed to appear for a status hearing in August 2016. Later that month, the agency moved for permanent custody.

{¶ 7} In November 2016, Mother moved to reinstate visitation.[1] The court granted that request. Nonetheless, Mother did not visit with the children. The children's guardian ad litem filed a report recommending that the court grant permanent custody to the agency.

{¶ 8} At the permanent custody hearing in January 2017, Mother's counsel moved to withdraw from representing Mother, or alternatively, to continue the hearing date. Counsel explained that she had very limited contact with Mother, that Mother had failed to appear for an appointment before the hearing, and that counsel had not been provided with documents and the identity of witnesses until the day of the hearing. Mother explained to the court that she had been in a women's shelter and was not able to meet with her attorney. The state objected to any continuance, noting that Mother had previously failed to attend numerous court hearings on the case. The court denied these requests and commenced the hearing.

{¶ 9} Mother's agency caseworker testified that she had only seen Mother in person at court appearances and had minimal other contact with Mother. Mother gave the caseworker two pieces of paper on the day of the permanent custody hearing that appeared to indicate that Mother attended classes at a behavioral center. Mother also presented the caseworker with a letter from the Social Security Administration indicating that she received

---

1. The record indicates that Mother's visitations had been terminated after she failed to attend several visits without cancelling beforehand.

around $700 in monthly benefits. The caseworker was never able to visit Mother's residence as Mother twice cancelled scheduled visits.

{¶ 10} Mother testified that her lack of communication with the agency was because the caseworker always wanted to discuss adoption. She explained that she was at a behavioral center for four months while the case was ongoing and that she was currently taking parenting classes and receiving counseling. She did not exercise visitation with the children because she did not want to cause them to suffer emotionally. However, Mother admitted that she had "no good reason" not to have visited her children following her release from a hospital in or around February 2016.

{¶ 11} Mother stated that when her visits were reinstated by the court in November 2016, she was undergoing inpatient care. Later, visitation center employees told her that she would have to wait one month before they could schedule a visit. She confirmed that she was addicted to heroin when the case started but claims she is no longer addicted.

{¶ 12} The guardian ad litem filed a written report recommending that permanent custody of the children be granted to the agency. Ultimately, the court found that it was in the children's best interest to be placed in the permanent custody of the agency. Mother appeals the court's decision, raising three assignments of error.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE COURT ERRED WHEN FINDING THAT J.D., E.P., B.D. AND C.D., WERE NEGLECTED AND DEPENDENT CHILDREN PURSUANT TO R.C. 2151.414(E)(10) IN AS MUCH AS THE FINDING WAS IN ERROR AND THE FINDING WAS MADE TO SUPPORT THE BEST INTEREST OF THE CHILD.

{¶ 15} Mother argues that the evidence showed that when the children were removed from Mother's custody they were safe and staying with neighbors. Accordingly, Mother contends that there was insufficient evidence to demonstrate that they were neglected or

- 4 -

dependent.

**{¶ 16}** The court did not find that the children were neglected. Before the dependency hearing, the agency dismissed the counts alleging neglect. With respect to the court's determination that the children were dependent, Mother failed to appeal this decision.

**{¶ 17}** A determination by a juvenile court that a child is dependent, followed by a grant of temporary custody to a public children services agency, constitutes a final appealable order. *In re Murray*, 52 Ohio St.3d 155, syllabus (1990); *In re C.G.*, 12th Dist. Preble Nos. CA2007-03-005 and CA2007-03-006; 2007-Ohio-4361, ¶ 11. The court found the children dependent in July 2015. Mother did not appeal that decision within thirty days as required by App.R. 4(A)(1). Accordingly, the children's dependency is *res judicata* and Mother is barred from challenging those findings in the context of this appeal. This assignment of error is overruled.[2]

**{¶ 18}** Assignment of Error No. 2:

**{¶ 19}** THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY DENYING THE APPELLANT'S REQUEST FOR A CONTINUANCE.

**{¶ 20}** Mother contends the trial court abused its discretion and violated her due process rights to the care and custody of her children when it denied her request for a continuance immediately before the permanent custody hearing. Mother argues that a brief continuance was necessary to allow her to gather evidence to demonstrate that she was compliant with the agency's case plan. Mother argues that a continuance would not have inconvenienced the other parties.

**{¶ 21}** The decision whether to grant or deny a motion for a continuance is within the trial court's sound discretion. *State v. Unger*, 67 Ohio St.2d 65, 67 (1981). The factors a trial

---

2. To the extent Mother is arguing that the court's finding that the children's parents abandoned them was not supported by the evidence, we address this issue in response to Mother's third assignment of error.

court should consider in ruling on such a motion include the length of the delay requested; the inconvenience to other litigants, witnesses, opposing counsel and the trial court; whether the requested delay is for a legitimate reason or dilatory and contrived; whether the party requesting the continuance contributed to the circumstances giving rise to the requested continuance; and any other factor relevant to the facts and circumstances of the case. *Id.* at 67-68. Additionally, Juv.R. 23 provides: "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties."

**{¶ 22}** Here, Mother cannot demonstrate that the court's decision denied her fair treatment or otherwise prejudiced her. Mother claims that the continuance would have allowed her to gather evidence to show that she was compliant with the case plan. However, Mother testified concerning her compliance. She conceded that she was taking parentings classes but had not completed the classes and was receiving counseling. She revealed that she had not remedied her housing situation, and was currently living in a motel. She admitted that she had been "on heroin" but was no longer. Accordingly, Mother's testimony established that she was only partially compliant with her case plan. Allowing Mother additional time to gather evidence would not change this fact.

**{¶ 23}** Moreover, the agency filed for permanent custody in August 2016. Therefore, Mother had six months – more than ample time – to prepare a defense. Instead, Mother failed to communicate with her attorney and waited until the day of the hearing to provide her attorney with documents and witnesses. We note that Mother's request for a continuance was also coupled with a request by Mother's counsel to withdraw from representation. Thus, Mother's conduct alone gave rise to the need to request a continuance. The court did not abuse its discretion in declining to continue the custody hearing and we perceive no violation of Mother's due process rights. This assignment of error is overruled.

**{¶ 24}** Assignment of Error No. 3:

- 6 -

{¶ 25}   WHETHER THE TRIAL [COURT] ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WOULD BE IN THE BEST INTEREST OF J.D., E.P., B.D., [AND] C.D. TO GRANT THE FAYETTE COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES PERMANENT CUSTODY AND PERMANENTLY TERMINATE THE PARENTAL RIGHTS OF APPELLANT.

{¶ 26}   Mother argues that the juvenile court's decision granting permanent custody of the children to the agency was not supported by clear and convincing evidence because the children could have been placed with Mother in a reasonable amount of time.

{¶ 27}   Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982); R.C. 2151.414(B)(1).   An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented.  *Id.*

{¶ 28}   Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test.  *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9.  First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D).  *Id.*  Second, the court must find that any of the following apply: (1) the child is abandoned, (2) the child is orphaned, (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, (4) where the preceding three factors do not apply, the child

cannot be placed with either parent within a reasonable time or should not be placed with either parent, or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *Id.*

{¶ 29} In this case, the juvenile court found that the children had been in the temporary custody of the agency for more than 12 months of a consecutive 22-month period as of the date the agency filed for permanent custody. Mother does not dispute this finding. Instead, Mother challenges the court's finding that the children could not be placed with her within a reasonable time. However, because the court found that the children had been in the agency's temporary custody for more than 12 months in a consecutive 22-month period, it was unnecessary to find that the children could not be reunified with Mother in a reasonable time. *In re. C.B.* at ¶ 10.

{¶ 30} While the phrasing of Mother's assignment of error purports to challenge the court's conclusion that an award of permanent custody to the agency was in the children's best interest, she does not address this issue in her argument. Nonetheless, we will address the court's best-interest finding.

{¶ 31} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

- 8 -

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 32} In granting the motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at the hearing. With respect to R.C. 2151.414(D)(1)(a), the juvenile court found that the children had no contact or interaction with their respective fathers or fathers' families since the case began and had only had sporadic visits from Mother, the last of which occurred in February 2016. Accordingly, the court concluded that clear and convincing evidence demonstrated that the children's parents abandoned them.

{¶ 33} In consideration of R.C. 2151.414(D)(1)(b), the juvenile court noted that the guardian ad litem's report indicated that the two older children did not wish to have any more visits with Mother. As to the younger children, the guardian ad litem recommended that permanent custody be granted to the agency.

{¶ 34} In considering R.C. 2151.414(D)(1)(c), the juvenile court reviewed the children's custodial history. It found that the children had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period.

{¶ 35} With respect to R.C. 2151.414(D)(1)(d), the juvenile court found that the children were in need of a legally secure placement and that the children would not have a legally secure placement unless the court granted the agency permanent custody.

- 9 -

{¶ 36} Finally, with respect to R.C. 2151.414(D)(1)(e), the juvenile court found that the children's parents abandoned them.

{¶ 37} We have carefully and thoroughly reviewed the evidence in this case and find that the juvenile court's determination regarding the best interest of the children was supported by clear and convincing evidence and was not against the manifest weight of the evidence. The record demonstrated that the children's fathers abandoned them or consented to a grant of permanent custody. In the 18 months that this case was pending prior to the hearing on permanent custody, Mother failed to maintain contact with the agency, failed to take any meaningful steps towards completing the goals of her case plan, failed to complete counseling and parenting classes, and failed to obtain and maintain stable housing. Mother also only exercised sporadic visits with her children and then did not visit them for nearly a year prior to the hearing on permanent custody. Mother's actions did not indicate that she wanted to reunify with the children.

{¶ 38} The children have been doing well in their foster home and their foster family has indicated a willingness to adopt them. Therefore, we find the juvenile court's decision was supported by the evidence and we find no error in the juvenile court's decision to grant permanent custody to the agency. This assignment of error is overruled.

{¶ 39} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.