[Cite as *In re C.M.*, 2017-Ohio-5854.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

IN THE MATTER OF:                    :

            C.M., et al.            :

                                                    :

                                                  :

CASE NOS. CA2017-01-004
CA2017-01-005

O P I N I O N
7/17/2017

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 15-D000043

Gray and Duning, John C. Kaspar, 130 East Mulberry Street, Lebanon, Ohio 45036, for appellant, B.M.

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for appellee, Warren County Children Services

David Smith, 251 West Central Avenue, Suite #235, Springboro, Ohio 45066, for J.S.

Lauren L. Clouse, 7681 Tylers Place Blvd., Suite 3, West Chester, Ohio 45069, for CASA

**HENDRICKSON, P.J.**

{¶ 1} Appellant, the biological mother ("Mother") of C.M. and T.M. (referred to collectively as the "children"), appeals a decision of the Warren County Court of Common Pleas, Juvenile Division, denying appellant's motion for a six-month extension of temporary custody and granting permanent custody of the children to appellee, Warren County Children

Services ("WCCS").

{¶ 2} C.M. was born July 17, 2010 and T.M. was born October 3, 2011. C.M.'s father failed to appear at the permanent custody trial and did not appeal the decision of the juvenile court. T.M.'s father died during the pendency of this case. On May 9, 2015, police removed the children from their parents' care after finding the children unattended and walking around the neighborhood in feces-soiled diapers. The police investigation revealed the children were in the care of C.M.'s father, who was unaware of the children's whereabouts and admitted to drug use. Mother's whereabouts were unknown. WCCS initially placed the children on a safety plan with C.M.'s grandmother, until she expressed she couldn't adequately care for them. On May 19, 2015, WCCS filed a complaint alleging neglect and dependency. Following a hearing on the matter, the juvenile court adjudicated the children neglected and dependent, and placed the children in the temporary custody of WCCS.

{¶ 3} WCCS placed the children in a foster home to adopt, and on August 11, 2015, initiated case plan services with C.M.'s father. Mother could not begin case plan services at that time because her whereabouts remained unknown. On October 6, 2015, WCCS amended the case plan to include services for Mother. The amended case plan required Mother to complete drug and alcohol and mental health assessments, complete any recommendations therefrom, submit to random drug screenings, obtain and maintain stable housing and income, maintain contact with WCCS, and complete a parenting class. Throughout the pendency of this case, Mother failed to complete any of her case plan services.

{¶ 4} From September 2015 through December 2015, Mother entered an in-patient drug and alcohol facility. However, Mother failed to complete the program because, contrary to her treatment recommendation, she voluntarily left the program at the end of December. While enrolled in the program, Mother participated in a mental health assessment, individual

- 2 -

and group counseling, submitted negative drug screenings, and regularly engaged in visits with the children. Mother testified she left the program due to concerns that other participants abused drugs within the facility. Mother did not enroll in another treatment program after leaving the in-patient facility.

{¶ 5} From December 2015 through May 2015, Mother received Vivitrol shots to attempt to combat her ongoing struggles with drug abuse. However, the treatment was unsuccessful, as she relapsed in March 2015. Mother submitted one negative drug screening after leaving the in-patient facility in January 2016, but did not complete any further drug screenings, as Mother's contact with WCCS ceased in January. In March 2016, contact resumed between Mother and WCCS, while Mother was incarcerated. The caseworker testified that during Mother's incarceration, Mother expressed that she was unsure if she wanted to reunify with the children, unsure whether she wanted to complete her case plan services, and that she knew "she was messing up her children's lives at that time, and did not feel that she wanted to continue doing that * * *." Following Mother's release from jail, she did not have any contact with WCCS until November 2016. Mother testified that she didn't "really have a reason" to maintain such contact. From March 2016 through November 2016, Mother was incarcerated four separate times. Although not the basis for her convictions, Mother's drug abuse continued during this period.

{¶ 6} On September 14, 2016, WCCS moved for permanent custody on the grounds the parents failed to remedy the conditions causing removal and the parents failed to complete case plan services or change their behavior and circumstances so that reunification would be possible at the time of filing or within sixth months after filing. On or around early November 2016, Mother left a voicemail for the caseworker, stating she had completed a 30-day drug treatment program. Mother did not provide any further information regarding the program. The caseworker responded by leaving a voicemail for Mother, informing her WCCS

moved for permanent custody and that she should contact her attorney.

{¶ 7}   At trial, Mother testified she has had no contact with the children since January 2016.  However, Mother explained she currently resided with her father and had been drug-free for three months, secured employment with a Lebanon factory a few weeks prior to trial, and had attempted to contact a drug facility for counseling.  Mother did not provide any documentation for her housing, employment, or any counseling facilities.

{¶ 8}   Throughout most of this case, the children have been in the care of a foster family.  The caseworker testified the children engaged in counseling due to anger and grief issues stemming from their parents' failure to communicate and visit as well as for feelings of abandonment.  The foster family has expressed an interest in adopting the children and a strong bond exists between the children and the foster family.  The children refer to the foster family as "mom," "dad," and "sister."  Both the caseworker and the CASA recommended permanent custody to WCCS was in the best interest of the children.

{¶ 9}   On December 13, 2016, the juvenile court granted WCCS's permanent custody motion and denied Mother's motion for a six-month extension.  This appeal followed.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED IN FINDING, BY CLEAR AND CONVINCING EVIDENCE, THAT THE CHILDREN COULD NOT BE PLACED WITH EITHER PARENT WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH EITHER PARENT.

{¶ 12} Mother contends the juvenile court improperly granted permanent custody to WCCS against the children's best interest.  In so doing, Mother argues the juvenile court should have granted her motion for a six-month extension of temporary custody to provide her the opportunity to demonstrate her commitment to the children and to remedy the conditions that caused the children's removal.

{¶ 13} "The rights to conceive and to raise one's children have been deemed

- 4 -

'essential' * * *." *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972), quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Despite the fact that we have found that parents who are suitable have a paramount right to raise and care for their children, it is equally well settled that '[t]he fundamental interest of parents is not absolute.'" (Citations omitted.) *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, ¶ 40. "The constitutional right to raise one's children does not include a right to abuse, exploit, or neglect them, nor is there a right to permit others to do so." *Id.* "The state's power to terminate parental rights is circumscribed * * *." *Id.* at ¶ 41, citing *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979). However, "when that authority is properly invoked, it is fully proper and constitutional to remove children from their parents' care. [S]uch an extreme disposition is nevertheless expressly sanctioned * * * when it is necessary for the 'welfare' of the child[ren]." *In re AsF(F)*, 12th Dist. Madison Nos. CA2016-05-020 and CA2016-05-021, 2016-Ohio-7836, ¶ 12, quoting R.C. 2151.01(A).

{¶ 14} Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982); *In re E.G.*, 12th Dist. Butler No. CA2013-12-224, 2014-Ohio-2007, ¶ 6. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). This court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. An appellate court will not reverse a finding by the juvenile court that the evidence was clear and convincing absent sufficient conflict in the evidence. *Id.*

{¶ 15} "Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test." *In re T.P.*, 12th Dist. Clermont No. CA2016-03-012, 2016-Ohio-5780, ¶ 13. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child. R.C. 2151.414(B)(1). In so doing, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in R.C. 2151.414(D). Second, the court must find that any of the following apply: (1) the child is abandoned, (2) the child is orphaned, (3) the child has been in temporary custody of the agency for at least 12 months of a consecutive 22-month period, (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a) thru (e); *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. To satisfy part two of the permanent custody test, only one of the above five findings need be met. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 16} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child

- 6 -

has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

(d)  The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)  Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 17} In granting WCCS' motion for permanent custody, the juvenile court considered each of the best interest factors in light of the evidence presented at trial.  With respect to the first statutory factor, the juvenile court found the children have adjusted to and, are bonded with their foster family who have expressed an interest in adopting them.  The juvenile court found permanent custody to WCCS as the children's only chance at stability so that adoption proceedings may be undertaken.

{¶ 18} In consideration of the second statutory factor, the juvenile court did not conduct an interview with the children due to their age.  The CASA conveyed the wishes of the children through his report and recommendation supporting permanent custody to WCCS.  The CASA opined Mother failed to demonstrate she can provide the secure and permanent home the children needed.

{¶ 19} With respect to the third statutory factor, the juvenile court reviewed the children's custodial history and found the children were adjudicated dependent and neglected and had been in the temporary custody of WCCS since the beginning of the case and continued to be in WCCS's custody at the time of its decision.

{¶ 20} In considering the fourth statutory factor, the juvenile court found the children's need for a legally secure placement could only be achieved by granting permanent custody to WCCS.  Specifically, the juvenile court found Mother unable to meet the needs of the children due to her failure to remedy the conditions that resulted in the children's removal.

Further, T.M.'s father is dead and C.M.'s father removed himself from this case and, in turn, from C.M.'s life. The juvenile court found the parents abandoned the children. Thus, adoption remained the children's best chance to achieve the stable family home they needed.

{¶ 21} With respect to the fifth statutory factor, the juvenile court found the children abandoned and that the children could not be placed with either parent within a reasonable time. Mother does not dispute the juvenile court's finding of abandonment. The juvenile court based its finding the children could not be placed with Mother within a reasonable time on her continuous and repeated failure to substantially remedy the conditions causing removal. Specifically, the juvenile court found Mother failed to utilize available rehabilitative services and material resources, demonstrated a lack of commitment toward the children and unwillingness to provide an adequate home, and Mother was unable or unwilling to provide basic life necessities based on her substantial noncompliance with her case plan.[1]

{¶ 22} Based on these findings, the juvenile court found by clear and convincing evidence that it was in the children's best interest to grant permanent custody to WCCS. Mother disputes the juvenile court's consideration of the statutory factors, arguing the juvenile court failed to properly construe the evidence presented, as it arbitrarily focused on whether Mother's late efforts were "too little, too late".

{¶ 23} After thoroughly reviewing the record, we find the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence. *In re S.S.*, 2d Dist. Miami No. 2011-CA-07, 2011-Ohio-5697, ¶ 31-38 (holding a grant of permanent custody is in a child's best interest where a parent fails to make any progress in

---

1. Because the trial court found Mother had abandoned the children, it was unnecessary to find that the children could not be reunited with Mother within a reasonable time. *In re J.D.*, 12th Dist. Fayette No. CA2017-02-002, 2017-Ohio-4229, ¶ 29.

his or her case plan and fails to become and remain drug free). Though Mother testified regarding her efforts to complete the services in her case plan during the final few weeks leading up to the permanent custody trial, there are compelling reasons to weigh the best interest factors in favor of permanent custody to WCCS. The caseworker testified regarding the serious concerns related to Mother's care for the children, her refusal to make any appreciable effort to meet the requirements of her case plan, Mother's extensive periods of no contact with the children and WCCS, and her ongoing struggles with drug abuse.

{¶ 24} During the pendency of this case, Mother has yet to complete one case plan service, and Mother even discussed with the caseworker, the negative impact her repeated failures to stay drug-free have had on the children. Mother did join an in-patient drug and alcohol facility, but failed to successfully complete the program. She testified at trial she completed a 30-day drug and alcohol program, obtained a job, and resided with her father – all within the few weeks leading up to the permanent custody trial. However, she failed to provide any documentation to verify any of this information. In light of Mother's alleged last-ditch effort, the evidence presented still compels a finding she failed to remedy the conditions causing removal. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 23 (a parent is afforded a reasonable, not an indefinite, period of time to remedy the conditions causing the children's removal); *In re A.M.L.*, 12th Dist. Butler No. CA2013-01-010, 2013-Ohio-2277, ¶ 32.

{¶ 25} Competent, credible evidence, demonstrates Mother's ongoing substance abuse remains a very real concern, as she failed to submit drug tests, relapsed during the pendency of the case despite receiving Vivitrol shots, and failed to complete her in-patient treatment. Aside from the ongoing drug concerns, a thorough review of the best interest factors necessitates consideration of the extended periods of no contact between Mother and WCCS as well as between Mother and the children. When the juvenile court made its

decision granting permanent custody, Mother had not seen the children in almost 12 months. Mother testified she did not "really have a reason" to maintain contact with WCCS. Moreover, despite the effort of WCCS to provide an opportunity for reunification through case plan services, Mother made the decision to not take the necessary steps towards the end goal of providing a safe, stable home for the children.

{¶ 26} "It is important to have finality in custody determinations to protect the best interest of the child[ren]." *In re A.L.A.*, 11th Dist. Trumbull No. 2016-T-0022, 2016-Ohio-5887, ¶ 20. The children are young and need to know whom they may rely upon for their care and nurture. Their foster family has indicated a desire to adopt them. The initiation of this case occurred over two years ago and considering the almost complete lack of effort to move towards reunification by Mother outside of the few weeks before the permanent custody trial, permanency for the children is not promoted by granting Mother's motion for a six-month extension. Accordingly, the juvenile court's determination regarding the best interest of the children is supported by clear and convincing evidence.

{¶ 27} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.