[Cite as *In re M.E.K.*, 2017-Ohio-7543.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | |
| M.E.K. | : | CASE NO. CA2016-12-241 |
| | : | O P I N I O N<br>9/11/2017 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2014-0374

Marcelina C. Woods, P.O. Box 922, Mason, Ohio 45040, guardian ad litem

Jeannine C. Barbeau, 3268 Jefferson Avenue, Cincinnati, Ohio 45220, for Father

Nicole M. Stephenson, 30 North "D" Street, Hamilton, Ohio 45013, for Mother

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Children Services

**PIPER, J.**

{¶ 1} Appellant, the father of M.K. ("Father"), appeals the grant of a permanent planned living arrangement for M.K. by the Butler County Court of Common Pleas, Juvenile Division.

{¶ 2} Father and M.K.'s mother ("Mother") were never wed, and M.K. lived primarily

with Father during her childhood. When M.K. was 14, Butler County Children Services filed a complaint alleging that M.K. was dependent due to Father's physical abuse of the child. The physical abuse included father hitting the child with a belt several times, throwing her into a door, and choking her.

{¶ 3} The agency moved for temporary custody of the child, and Father agreed that M.K. was dependent. A magistrate then awarded temporary custody of the child to the agency. Approximately a year and a half later, the agency filed a motion for a permanent planned living arrangement ("PPLA") for the child. The matter proceeded to a hearing before the magistrate. Immediately preceding the hearing, Father requested a continuance so that he could obtain different counsel. The motion was denied by the magistrate, and the matter proceeded.

{¶ 4} During the hearing, the magistrate heard evidence that Mother agreed with the PPLA while Father opposed it. The magistrate also heard evidence regarding Father's failure to complete the case plan, and the child's guardian ad litem ("GAL") recommended the PPLA. The court also conducted an in camera interview with the child, who was 16 years old at the time of the hearing.

{¶ 5} The magistrate granted the PPLA, and Father filed objections to the magistrate's decision. The trial court overruled Father's objections without a hearing and adopted the magistrate's decision. Father now appeals the juvenile court's decision, raising the following assignments of error.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE JUVENILE COURT'S JUDGMENT GRANTING THE MOTION FOR PLANNED PERMANENT LIVING ARRANGEMENT ("PPLA") TO BUTLER COUNTY CHILDREN SERVICES ("BCCS") WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AN ABUSE OF DISCRETION, CONTRARY TO LAW, WAS NOT SUPPORTED

BY SUFFICIENT CLEAR AND CONVINCING EVIDENCE, AND WAS CONTRARY TO THE

BEST INTEREST OF THE CHILD.

{¶ 8}   Father argues in his first assignment of error that the juvenile court erred in

granting the PPLA.

{¶ 9}   A PPLA is a placement that gives legal custody to an agency without

terminating parental rights and that allows the agency to make an appropriate placement,

including foster care.  *In re J.S.,* 12th Dist. Butler No. CA2006-07-172, 2007-Ohio-1223.

According to R.C. 2151.353(A)(5), once a child has been adjudicated dependent, the agency

can move for a PPLA if the juvenile court finds by clear and convincing evidence that a PPLA

is in the child's best interests and one of the following exists:

> (a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care now and for the foreseeable future beyond the date of the dispositional hearing held pursuant to section 2151.35 of the Revised Code.
>
> (b) The child is sixteen years of age or older, the parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D)(1) of section 2151.414 of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
>
> (c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, and is unwilling to accept or unable to adapt to a permanent placement.

{¶ 10}   In making the decision, a court must consider all of the following relevant

factors found in R.C. 2151.414(D):

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b)  The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c)  The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d)  The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)  Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 11}  After reviewing the record, we find that the juvenile court did not err by granting the PPLA where the court's decision was supported by clear and convincing evidence that the PPLA was in the child's best interest.  During the hearing, the court heard evidence regarding the factors above.  Specifically, the court heard testimony that M.K. and Father had a very strained relationship, and that M.K. wanted to remain in her foster care placement rather than be returned to Father.

{¶ 12}  The state presented testimony from the caseworker who worked with M.K., Mother, and Father during the inception of the case.  The caseworker testified that as part of Father's ongoing case plan, he was told to take a psychological assessment and follow up with any recommendations, some of which were anger management classes and individual counseling.  Father requested that he be removed from the case plan, and then several months later, requested to be added back onto the case plan.  The caseworker testified that while Father completed one aspect of the case plan, others were not completed.

{¶ 13}  For example, the caseworker testified that Father and the child were to attend

- 4 -

joint therapy sessions, but Father walked out of the second therapy session. Based on the interaction between Father and the child, the therapist recommended that family therapy stop because it would not be productive. Father never completed his individual therapy. The caseworker also testified that at all times, the child's wishes remained staying in foster care and not returning to Father.

{¶ 14} The child's foster mother also testified regarding the strained relationship between Father and the child. Specifically, the foster mother testified that she heard Father and the child in arguments, and on at least one occasion, the foster mother had to place herself physically between Father and the child. On another occasion, the child requested to be picked up only fifteen minutes into a visit with Father, and Father was also overheard telling the child to "get the F out" of his house. The foster mother also testified that when she left with the child, Father refused to allow the child to take personal belongings or school supplies.

{¶ 15} During Father's testimony, he recalled that his relationship with the child broke down when the child turned 12 years old and became disrespectful to him. Father testified that he punished the child by hitting her with a belt and his hand. Father also admitted during his testimony that he asked to be removed from the case plan at one time because, "if my daughter does not want to return in my home then there's no sense in me taking the classes and jumping hoops [sic] and bowing down to what it is that they want me to do."

{¶ 16} The child's mother testified that she agreed with the PPLA because it was in the child's best interests to "stay away" from Father and that Father had never been anything but "cruel" to the child over the years. Mother also testified that the child was doing well and was well taken care of in her foster family's home. Mother also shared her opinion that since the child has been in foster care, "everything about her has improved."

{¶ 17} The child's GAL recommended that the PPLA be granted, and the child

receive ongoing support during her transition into adulthood. The magistrate also conducted an in camera interview with the child. The magistrate determined that the child was "extremely mature and able to thoughtfully express her wishes and concerns, and those wishes and concerns were taken into account in issuing this decision."

{¶ 18} After reviewing the evidence, we find that the juvenile court did not err by granting the Agency's motion for a PPLA for M.K., as it was in the child's best interest and other statutory mandates were satisfied. Therefore, Father's first assignment of error is overruled.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE JUVENILE COURT'S DECISION TO DENY APPELLANT/FATHER'S MOTION FOR CONTINUANCE VIOLATED HIS RIGHT TO COUNSEL.

{¶ 21} Father argues in his second assignment of error that the juvenile court erred by denying his motion for a continuance.

{¶ 22} According to Juv.R. 23, "Continuances shall be granted only when imperative to secure fair treatment for the parties." The decision whether to grant or deny a motion for a continuance is within the trial court's sound discretion. *In re J.D.*, 12th Dist. Fayette No. CA2017-02-002, 2017-Ohio-4229. The factors a trial court should consider in ruling on such a motion include the length of the delay requested, the inconvenience to other litigants, witnesses, opposing counsel and the trial court, whether the requested delay is for a legitimate reason or dilatory and contrived, whether the party requesting the continuance contributed to the circumstances giving rise to the requested continuance, and any other factor relevant to the facts and circumstances of the case. *Id.*

{¶ 23} On the day before the hearing was to begin, Father requested a continuance and then on the day of the hearing explained that he wanted time to obtain different counsel than the attorney originally appointed to his case. Father told the court that he was not

"being represented properly and I am not comfortable with [counsel] and I would like a continuance." Father's attorney then stated that Father believed there to be an "irreparable breakdown in [the] attorney-client relationship between the two of us." Even so, Father's attorney assured the court that he was willing and able to move forward with the hearing.

{¶ 24} The record contains ample evidence that the court did not err in denying Father's request for a continuance. Father knew for almost two years that his child was subject to the juvenile court's jurisdiction, and that he was involved in a custody issue with the agency. Father had ample time to secure private or different counsel, but waited until the day before the PPLA hearing to ask for time to secure different counsel. At the time Father requested the continuance, all other parties, including the state, the court, Mother, and the child's GAL, were ready to move forward with the case. The child was entitled to have her placement determined with finality, particularly given the length of time already in foster care.

{¶ 25} Father indicates that he and his counsel could not work together and that his counsel was not prepared for the hearing, yet the transcript of the PPLA hearing demonstrates otherwise. Father's attorney presented a thorough case on behalf of Father's opposition to the PPLA, and cross-examined witnesses to support Father's case. Father and his counsel spoke and worked together throughout the trial, and Father's counsel objected to questions and actively participated in the hearing. While the court granted the PPLA, that does not mean that Father was denied effective counsel or a fair hearing on the matter. Rather, the record clearly indicates that Father received fair treatment and was not prejudiced by the lack of a continuance. To incur additional delay with a continuance would not have altered the result, and would only have served to leave the child's security and stability tenuous.

{¶ 26} After reviewing the record, we find that the court did not err by denying Father's motion for a continuance. Father's second assignment of error is, therefore, overruled.

{¶ 27}   Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.