[Cite as *In re W.J.S.*, 2019-Ohio-1258.]

.

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

|  |  |
|---|---|
| IN RE: W.J.S. and H.C.S. | : |
|  | : |
|  | : Appellate Case No. 28037 |
|  | : |
|  | : Trial Court Case Nos. 2017-499 & |
|  | : 2017-500 |
|  | : |
|  | : (Appeal from Common Pleas Court – |
|  | : Juvenile Division) |
|  | : |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 5th day of April, 2019.

. . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Appellee, Montgomery County Children Services

BENJAMIN W. ELLIS, Atty. Reg. No. 0092449, 805-H Patterson Road, Dayton, Ohio 45419
    Attorney for Appellant, Mother

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Mother, appeals from a judgment placing her daughter, H.C.S., in a planned permanent living arrangement ("PPLA") with the Montgomery County Department of Job and Family Services, Children Services Division (MCCS). For the following reasons, the trial court's judgment will be affirmed.

I. Facts and Course of Proceedings

{¶ 2} On January 26, 2017, MCCS filed complaints in the trial court, alleging that H.C.S. (born in February 2001) and W.J.S. (born in December 2007) were neglected and dependent. According to the complaints, MCCS had received referrals about Mother's ongoing substance abuse in November and December 2016, and Mother had agreed to place her children with their maternal aunt (Aunt). However, while the children's maternal grandmother was watching both children on January 25, 2017, Mother removed the children from the grandmother's care, broke into Aunt's home, and stole the children's belongings. Mother then fled with the children to the Greyhound bus station, where police located them.

{¶ 3} The complaints also alleged that Mother had tested positive for drugs, that H.C.S. had truancy issues, and that domestic violence had occurred in Mother's home while the children were present. In addition, the complaints alleged that Mother had substance abuse issues and was unable to care for her children's needs. MCCS, therefore, asked for temporary custody of H.C.S. and W.J.S. Alternatively, MCCS asked

that custody be granted to Aunt. On the day the complaints were filed, a magistrate gave interim temporary custody of W.J.S to Aunt and interim temporary custody of H.C.S. to MCCS.

{¶ 4} MCCS then developed a case plan for Mother and the children's fathers.[1] Mother's objectives included completion of a drug and alcohol assessment and following any recommendations; completion of parenting and psychological assessments and following any recommendations; obtaining and maintaining employment and housing and providing verification of both; attending all legal, medical, therapeutic, and educational appointments for the children; and signing releases of information as needed for service providers.

{¶ 5} Following a dispositional hearing in June 2017, the trial court adjudicated W.J.S. and H.C.S. neglected and dependent. The court then gave MCCS temporary custody of H.C.S.; Aunt was awarded temporary custody of W.J.S. These temporary custody orders were scheduled to expire on January 26, 2018.

{¶ 6} In August 2017, MCCS filed a motion asking the court to transfer temporary custody of W.J.S. to MCCS. In addition, MCCS sought an ex parte order for a grant of interim temporary custody. These motions were based on difficulties Aunt was having. As a result, the trial court granted interim temporary custody of W.J.S. to MCCS on August 4, 2017.

{¶ 7} Subsequently, on November 30, 2017, MCCS filed a motion asking the court to grant it a PPLA for H.C.S. The same day, MCCS sought a first extension of temporary custody of W.J.S., asking that temporary custody be given either to MCCS or Aunt. The

---

[1] The fathers are not parties to this appeal.

trial court then scheduled a February 23, 2018 hearing on the motions.

{¶ 8} Shortly before the hearing date, Mother filed a lengthy pro se motion to dismiss, claiming that her rights had been violated. She also filed a motion to remove the magistrate and trial judge from the case. On February 21, 2018, the trial court overruled the motion for removal. The following day, MCCS filed an amended motion in connection with its request to extend temporary custody. While MCCS still sought a first extension of its own temporary custody of W.J.S., the amendment alternatively asked the court to grant legal custody of W.J.S. to Aunt.

{¶ 9} On February 23, 2018, the hearing took place as scheduled. At that time, the magistrate granted Aunt interim temporary custody of W.J.S., but otherwise continued the matter until May 17, 2018. On that date, the magistrate held a dispositional hearing on the amended motion for legal custody of W.J.S. and the motion for a PPLA. At the hearing, the court heard testimony from Sherree Spence, the ongoing MCCS caseworker for the family, and from Aunt. During the hearing, MCCS also asked the court to take judicial notice of the guardian ad litem reports and the prior pleadings in the case. Mother did not appear for the hearing, and the hearing transcript indicates that Mother previously had elected to proceed without counsel. Transcript of Proceedings ("Tr."), pp. 5 and 43.[2]

{¶ 10} On May 17, 2018, the magistrate filed a decision granting legal custody of W.J.S. to Aunt and a PPLA to MCCS for H.C.S. At the end of the decision, the magistrate

---

[2] The court had appointed three attorneys for Mother, and the third attorney, as well as prior counsel, had been discharged due to breakdown in communications between Mother and the attorney. Case No. 2017-500 Doc. #14, p. 2. When the third attorney was discharged, Mother did not ask for further appointed counsel. Instead, she said that she wished to represent herself. *Id.* The trial court did appoint counsel for the children, as well as a guardian ad litem, and these attorneys were present at the hearing. *See* Tr. at p. 2.

included an order from the trial court adopting the magistrate's decision and notifying the parties of the requirements for objecting to the magistrate's decision. However, Mother failed to file objections to the magistrate's decision and instead filed a notice of appeal on June 15, 2018. In her sole assignment of error, Mother claims that the trial court "plainly erred in granting a planned permanent living arrangement for H.C.S. because it did not make the necessary findings of fact."

{¶ 11} Mother does not challenge the magistrate's decision granting legal custody of W.J.S. to Aunt. Accordingly, that part of the magistrate's decision will be affirmed without further discussion.

## II. Effect of Failure to File Objections

{¶ 12} Juv.R. 40(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." "The purpose behind the appellate waiver rule is to ensure that the trial judge shall have an opportunity to correct any errors occurring in the trial judge's court, the only exception being for plain error." *In re M.G. and C.G.*, 2d Dist. Miami No. 07-CA-6, 2007-Ohio-3589, ¶ 15. "Thus, the failure to file objections waives the right to appellate review and precludes relief * * * in the absence of civil plain error." *In re A.P.*, 2d Dist. Montgomery No. 28023, 2019-Ohio-139, ¶ 10, citing *In re Etter*, 134 Ohio App.3d 484, 731 N.E.2d 694 (1st Dist.1998).

{¶ 13} " '[I]n appeals of civil cases, the plain error doctrine is not favored and may

be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.' " *In re A.J.S.*, 2d Dist. Miami No. 2007 CA 2, 2007-Ohio-3433, ¶ 16, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. Consequently, because Mother failed to file objections to the magistrate's decision, we review Mother's claim only for plain error.

### III.   Permanent Planned Living Arrangement for H.C.S**.**

**{¶ 14}** In its November 2017 motion, MCCS asked the trial court to place H.C.S. in a PPLA pursuant to R.C. 2151.353, R.C. 2151.415, and R.C. 2151.417. According to Mother, only R.C. 2151.415 applied in this case, and the trial court plainly erred by failing to make all the required findings for a PPLA under that statute. In contrast, the State contends that it could file for a PPLA under either R.C. 2151.353 or R.C. 2151.415, and that the requirements under R.C. 2151.353(A)(5) were satisfied.

**{¶ 15}** A PPLA, or planned permanent living arrangement, is defined as a juvenile court order that: (1) gives a public children services agency legal custody of a child without terminating parental rights; and (2) also lets the agency "make an appropriate placement of the child and to enter into a written agreement with a foster care provider or with another person or agency with whom the child is placed." R.C. 2151.011(A)(38). *See also In re A.B.*, 110 Ohio St.3d 230, 2006-Ohio-4359, 852 N.E.2d 1198, ¶ 24. Both R.C. 2151.353 and R.C. 2151.415 contain provisions that allow PPLAs to be granted in juvenile cases.

**{¶ 16}** R.C. 2151.353 addresses the available dispositions if a child is adjudicated

abused, neglected, or dependent. Among the available dispositions is granting temporary custody to the agency. *See* R.C. 2151.353(A)(2)(a). Another option is to place the child in a PPLA with a public children services agency. *See* R.C. 2151.353(A)(5).

{¶ 17} Specifically, R.C. 2151.353(A) provides, in pertinent part, that:

> If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
>
> * * *
>
> (5) Place the child in a planned permanent living arrangement with a public children services agency or private child placing agency, if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement and if the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child, that the child is sixteen years of age or older, and that one of the following exists:
>
> * * *
>
> (c) The child has been counseled on the permanent placement options available to the child, and is unwilling to accept or unable to adapt to a permanent placement.

{¶ 18} To decide if a child should be placed in a PPLA under R.C. 2151.353(A)(5)(c), the court "shall consider all relevant information that has been presented to the court, including information gathered from the child, the child's guardian ad litem, and the public children services agency or private child placing agency." R.C.

2151.353(B)(1).

{¶ 19} In its initial complaint, MCCS did not ask for a PPLA. Instead, MCCS asked for temporary custody of H.C.S. Consistent with this request, and after finding H.C.S. dependent and neglected, the trial court granted a temporary custody order under R.C. 2151.353(A)(2). Temporary custody orders issued under R.C. 2151.353(A) terminate within the earlier of one year after the complaint is filed or the child is placed in shelter care, unless a motion is filed under R.C. 2151.415. See R.C. 2151.353(G). In that event, "the temporary custody order will continue and not terminate until the court issues a disposition order" under R.C. 2151.415. *Id.*

{¶ 20} R.C. 2151.353 also allows agencies to file a motion "at any time" to ask the trial court "to modify or terminate any order of disposition" issued under R.C. 2151.353(A), R.C. 2151.414, or R.C. 2151.415. *See* R.C. 2151.353(F)(2). In such situations, the court is to "hold a hearing upon the motion as if the hearing were the original dispositional hearing" and "give all parties to the action and the guardian ad litem notice of the hearing pursuant to the Juvenile Rules." *Id.* We interpret this to mean that the trial court is to afford litigants the same procedural protections and consideration as would attend an initial hearing.

{¶ 21} An example of modification would be the motion that MCCS filed in August 2017 to change temporary custody of W.J.S. from Aunt to the agency, due to Aunt's difficulties. This occurred less than two months after Aunt was given temporary custody, and was well before MCCS would have needed to ask for an extension of temporary custody.

{¶ 22} As noted, R.C. 2151.415 also contains provisions pertaining to PPLAs.

R.C. 2151.415 outlines various procedures for dispositional orders, and states that where an agency has been given temporary custody under R.C. 2151.353, the agency "shall file a motion with the court that issued the order of disposition requesting that any of the following orders of disposition of the child be issued by the court * * *."   R.C. 2151.415(A).

{¶ 23} The specific dispositional orders in question are outlined in R.C. 2151.415(A)(1)-(6), and they are similar to the orders allowed under R.C. 2151.353(A). As pertinent here, they include "[a]n order that the child be placed in a planned permanent living arrangement."   R.C. 2151.415(A)(5).   MCCS could have chosen to seek an extension of temporary custody, as that is one of the options listed in the statute.   See R.C. 2151.415(A)(6).   However, MCCS chose to seek a PPLA.

{¶ 24} In this situation, an agency must file a motion for the trial court to issue one of the listed dispositional orders no later than 30 days before "the date for the termination of the custody order * * *."   R.C. 2151.415(A).   The clear implication is that R.C. 2151.415, rather than R.C. 2151.353, applies to proceedings taking place *after* the original dispositional order is filed.   In the case before us, the termination date for the temporary custody order was January 26, 2018, and MCCS filed a motion seeking a PPLA on November 30, 2017, well in advance of the deadline.

{¶ 25} After an agency's motion is filed, the trial court must hold a dispositional hearing and issue an order of disposition "in accordance with the best interest of the child as supported by the evidence presented at the dispositional hearing."   R.C. 2151.415(B). The requirements for PPLA orders are contained in R.C. 2151.415(C), and differ slightly from the provisions for such orders in R.C. 2151.353(A)(5).

{¶ 26} R.C. 2151.415(C)(1) states, in pertinent part, that:

If an agency pursuant to division (A) of this section requests the court to place a child into a planned permanent living arrangement, the agency shall present evidence to indicate why a planned permanent living arrangement is appropriate for the child, including, but not limited to, evidence that the agency has tried or considered all other possible dispositions for the child. A court shall not place a child in a planned permanent living arrangement, unless it finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child, that the child is sixteen years of age or older, and that one of the following exists:

* * *

(c) The child has been counseled on the permanent placement options available, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing for independent living.

{¶ 27} In her decision, the magistrate made several specific findings about Mother's case plan objectives, the services MCCS provided to Mother, Mother's conduct during the case, and Mother's failure to complete her case plan objections. After addressing these matters in detail, the magistrate concluded, "in sum," that Mother "has not addressed case plan concerns and has failed to demonstrate that she is able to care for the children at this time or within the foreseeable future. Moreover, the credible testimony from the caseworker and the maternal aunt * * * demonstrated to the Court that the placement of the children with the mother would place them at serious risk of harm." Case No. 2017-500 Doc. #5, pp. 2-3.

**{¶ 28}** In addition, the magistrate made the following findings about H.C.S:

- The Court further finds that no alternate placements have been identified for [H.C.S.]. [H.C.S.] remains in foster case where she is doing well. She is attending school and is on-track to graduate. She has good grades and works part-time. She appears well-adjusted in the foster home. [H.C.S.] has been visiting with her mother but at times she has refused to attend. Her relationship with her mother is complicated and inconsistent. [H.C.S.] has expressed that she wants to remain in foster care until she can emancipate.

- The child/[H.C.S.] is older than sixteen years, has been counseled on the permanent placement options available, is unwilling to accept or unable to adapt to a permanent placement.

- The GAL recommends * * * Planned Permanent Living Arrangement (PPLA) of [H.C.S.] to [MCCS].

- The placement addressed herein is in the best interest of the children.

- The case plan as previously filed is incorporated herein by reference.

Case No. 2017-500 Doc. #5 at p. 3.

**{¶ 29}** In granting MCCS's motion for a PPLA, the magistrate did not state that H.C.S. was "in an agency preparing for independent living." R.C. 2151.415(C)(1)(c). In contrast, R.C. 2151.353(A)(5) does not require this particular finding. Thus, if only R.C. 2151.415 applies to dispositional orders made after the first order, the magistrate erred by failing to make the finding.

**{¶ 30}** As noted, R.C. 2151.415(A) clearly applies to post-adjudication situations

where an agency has previously received temporary custody. However, some Ohio courts have applied R.C. 2151.353 to motions for planned permanent living arrangements made after a public children services agency has been given temporary custody of a child. *See, e.g., In re M.E.K.,* 12th Dist. Butler No. CA2016-12-241, 2017-Ohio-7543, ¶ 9 (applying R.C. 2151.353(A)(5) where child was dependent and agency was given temporary custody; agency then filed for a PPLA a year and a half later); *In re I.M.M.*, 8th Dist. Cuyahoga No. 107451, 2019-Ohio-461, ¶ 24 (referring to both R.C. 2151.415(C)(1)(a) and 2151.353(A)(5)(a)).

{¶ 31} Other courts have cited R.C. 2151.415 as the basis for the agency's motion. Obviously, decisions are inconsistent. *See, e.g.*, *In re R.P.*, 5th Dist. Licking No. 09 CA 123, 2010-Ohio-1334, ¶ 4 and 108 (agency asked that child be placed into PPLA pursuant to R.C. 2151.415(A)(5) and (C); appellate court then applied R.C. 2151.353(A)(5) standards in reviewing the trial court's decision); *In re J.S.*, 9th Dist. Summit No. 23842, 2008-Ohio-179, ¶ 3-4 and 16-36 (PPLA motion was brought under R.C. 2151.415 one year after agency had been given temporary custody; court evaluated PPLA decision under R.C. 2151.415(C)(1)).

{¶ 32} We need not resolve these issues, however. Assuming that R.C. 2151.415, rather than R.C. 2151.353, is the controlling statute, the trial court's failure to state one element of the finding in R.C. 2151.415(C)(1)(c) was not an error that " 'seriously affect[ed] the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.' " *A.J.S.*, 2d Dist. Miami No. 2007 CA 2, 2007-Ohio-3433, at ¶16, quoting *Goldfuss*, 79 Ohio St.3d 116, 679 N.E.2d 1099, at syllabus.

{¶ 33} We see no harm that this omission caused, and it does not challenge the integrity of the judicial system. In this regard, we note that the same magistrate presided during the entire case and also conducted an in camera interview with H.C.S. *See* Case No. 2017-500 Doc. #4, Report and Recommendations of the Guardian Ad Litem, p. 3.

{¶ 34} More importantly, the State asked the court during the hearing to take judicial notice of the prior pleadings in the case. Tr. at p. 43. This record includes a January 12, 2018 "Case Review." In the review, MCCS stated that H.C.S. had "completed the Agency's Independent Living Program through the review period." Case No. 2017-500 Doc. #13, MCCS Case Review for the period between October 26, 2017, and January 12, 2018, p. 3. MCCS filed this document with the trial court on January 18, 2018. *Id.*

{¶ 35} There would be no value in remanding this case to the trial court to make a finding that is already evident in the record. We also note that H.C.S. turned 18 years old in February 2019, and is scheduled to graduate from high school in a few months, at which time the juvenile court will lose jurisdiction over the case. *See* R.C. 2151.353(F)(1).

{¶ 36} As a final matter, we will briefly address the dissent. According to the dissent, MCCS could not ask for a PPLA order because it did not request such a disposition in the original complaint. This argument is based on a very restrictive view that is not supported by either the statutes in question or the general principles underlying proceedings in neglect, abuse, and dependency cases.

{¶ 37} Specifically, the dissent first relies on R.C. 2151.353(C), which states that:

No order for permanent custody *or* temporary custody of a child *or*

the placement of a child in a planned permanent living arrangement shall be made pursuant to this section unless the complaint alleging the abuse, neglect, or dependency contains a prayer requesting permanent custody, temporary custody, *or* the placement of the child in a planned permanent living arrangement *as desired,* the summons served on the parents of the child contains as is appropriate a full explanation that the granting of an order for permanent custody permanently divests them of their parental rights, a full explanation that an adjudication that the child is an abused, neglected, or dependent child may result in an order of temporary custody that will cause the removal of the child from their legal custody until the court terminates the order of temporary custody or permanently divests the parents of their parental rights, or a full explanation that the granting of an order for a planned permanent living arrangement will result in the removal of the child from their legal custody if any of the conditions listed in divisions (A)(5)(a) to (c) of this section are found to exist, and the summons served on the parents contains a full explanation of their right to be represented by counsel and to have counsel appointed pursuant to Chapter 120. of the Revised Code if they are indigent.

(Emphasis added.)

{¶ 38} As noted earlier, R.C. 2151.353 deals with the initial disposition of children who are found neglected, dependent, or abused. R.C. 2151.353(C) simply requires that the agency state which initial disposition it *desires when the complaint is filed*, if it is one of the three listed dispositions. The statute is phrased in the alternative, so that an

agency can choose which disposition may be initially appropriate. This is logical, since agencies often act in emergency situations or may initially desire only temporary custody in order to work with parents on reunification. This, after all, is an important part of the statutory scheme. *See, e.g., In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 21 ("the importance of requiring reasonable reunification efforts * * * pervades federal and Ohio law").

{¶ 39} R.C. 2151.353(C) also clearly pertains only to the initial complaint, by requiring various explanations that must be included on the *summons* issued to parents, including the effect of various adjudications and dispositions and a parent's right to have counsel appointed.

{¶ 40} After citing R.C. 2151.353(C), the dissent relies on R.C. 2151.353(F)(2) for the proposition that an agency cannot ask the court to modify a prior disposition and grant a different order unless the agency previously requested the particular relief in its original complaint. The dissent specifically refers to PPLA orders (the context of the current case), but a more general application is unavoidable.

{¶ 41} The dissent's position is based on the wording in R.C. 2151.353(F)(2), which lets agencies ask to modify or terminate orders of disposition issued under R.C. 2151.353(A). These orders include: orders of protective supervision; orders giving temporary custody to the agency and other listed persons and entities; orders of legal custody to specified persons; orders of permanent custody to the agency; orders for planned permanent living arrangements; or orders removing a person who committed abuse from the child's home. *See* R.C. 2151.353(A)(1)-(6). Obviously, many of these initial orders are temporary in nature.

**{¶ 42}** R.C. 2151.353(F)(2) states that:

Any public children services agency, any private child placing agency, the department of job and family services, or any party, other than any parent whose parental rights with respect to the child have been terminated pursuant to an order issued under division (A)(4) of this section, by filing a motion with the court, may at any time request the court to modify or terminate any order of disposition issued pursuant to division (A) of this section or section 2151.414 or 2151.415 of the Revised Code. The court shall hold a hearing upon the motion as if the hearing were the original dispositional hearing and shall give all parties to the action and the guardian ad litem notice of the hearing pursuant to the Juvenile Rules. If applicable, the court shall comply with section 2151.42 of the Revised Code.

**{¶ 43}** The dissent's position is based on the above reference to holding the hearing as if it were the original dispositional hearing. From this, the dissent concludes that MCCS would be precluded from filing for a PPLA under R.C. 2151.353, because it did not ask for that particular relief in the complaint. We disagree.

**{¶ 44}** Accepting the dissent's position means that agencies could not seek to modify or terminate any order granted under R.C. 2151.353(A) if the complaint failed to specify the particular order that is later being sought, whether that order be temporary custody, permanent custody, or a PPLA. In other words, and as an example – if the agency did not ask for temporary custody in the complaint, but instead only asked for protective supervision, it could not later file a motion under R.C. 2151.353(F)(2), asking the court to modify or terminate protective supervision and grant the agency temporary

custody. Adopting the dissent's view would hamstring agencies and courts and is not consistent with the ability to modify or make new orders, which is essential in these types of cases.

{¶ 45} Furthermore, the clear intent of requiring that the matter proceed as on an original disposition is to ensure that parties receive the same protections and procedures afforded with respect to an initial dispositional hearing. For example, R.C. 2151.35(B) sets out procedures for dispositional hearings, including that:

> The dispositional hearing shall be conducted in accordance with all of the following:
>
> (a) The judge or referee who presided at the adjudicatory hearing shall preside, if possible, at the dispositional hearing;
>
> (b) The court may admit any evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence;
>
> (c) Medical examiners and each investigator who prepared a social history shall not be cross-examined, except upon consent of the parties, for good cause shown, or as the court in its discretion may direct. Any party may offer evidence supplementing, explaining, or disputing any information contained in the social history or other reports that may be used by the court in determining disposition.

R.C. 2151.35(B)(2).

{¶ 46} In addition, R.C. 2151.35(B)(3) provides time limits for entering judgment and other conditions for judgment. R.C. 2151.35(F) and (G) also set out procedures for accepting statements of children and taking their testimony by deposition. These

procedures are designed to ensure continuity in proceedings and protect the rights of parents, children, and agencies. This is completely consistent with the requirement in R.C. 2151.353(F)(2) that further dispositional proceedings will proceed as if they were the original dispositional hearing. Accordingly, we disagree with the dissent's restrictive interpretation of R.C. 2151.353(F)(2).

{¶ 47} Based on the preceding discussion, Mother's sole assignment of error is overruled.

IV.    Conclusion

{¶ 48} Mother's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.

FROELICH, J., dissents:

{¶ 49} The magistrate found that H.C.S. should be placed in a planned permanent living arrangement (PPLA) with MCCS, and the trial court adopted that decision without objection from Mother. I would conclude that the trial court committed plain error in granting that placement in the absence of a finding that H.C.S. was in an agency program preparing her for independent living, as required by R.C. 2151.415(C)(1).

{¶ 50} Both R.C. 2151.353 and R.C. 2151.415 contain provisions that provide for the modification of a trial court's disposition for an abused, dependent, or neglected child, and that provide for the placement of a child in a PPLA. R.C. 2151.353 addresses the available dispositions when a child is adjudicated an abused, neglected, or dependent

child; R.C. 2151.353(A)(5) governs the placement in a PPLA. In contrast, R.C. 2151.415 requires a public children services agency with temporary custody of a child to file a timely motion for one of several dispositions, including an order that the child be placed in a PPLA. R.C. 2151.415(A)(5); R.C. 2151.415(C).

{¶ 51} A juvenile court must make findings prior to placing a child in a PPLA, and those findings differ under R.C. 2151.353(A)(5) and R.C. 2151.415(C)(1). Under R.C. 2151.353(A)(5), a juvenile court may place a child in a PPLA with a public children services agency if it finds, among other things, that "the child has been counseled on the permanent placement options available to the child, and is unwilling to accept or unable to adapt to a permanent placement." R.C. 2151.353(A)(5). Under R.C. 2151.415(C)(1), the trial court must make those findings, plus an additional finding that the child "*is in an agency program preparing for independent living.*" (Emphasis added.)

{¶ 52} As noted in the majority opinion, Ohio courts have applied R.C. 2151.353 to motions for PPLA made after a public children services agency had temporary custody of a child. *See, e.g., In re A.B.*, 110 Ohio St.3d 230, 2006-Ohio-4359, 852 N.E.2d 1187; *In re Priser*, 2d Dist. Montgomery No. 19861, 2004-Ohio-1315.

{¶ 53} Nevertheless, regardless of whether both R.C. 2151.353 and R.C. 2151.415 generally can apply to motions for a PPLA after an initial disposition, I would find that R.C. 2151.353 is not applicable in this case. R.C. 2151.353(C) states:

> No order for permanent custody or temporary custody of a child or the placement of a child in a planned permanent living arrangement shall be made *pursuant to this section* [i.e., R.C. 2151.353] unless *the complaint alleging the abuse, neglect, or dependency contains a prayer requesting*

*permanent custody, temporary custody, or the placement of the child in a planned permanent living arrangement as desired*, the summons served on the parents of the child contains * * * a full explanation that the granting of an order for a planned permanent living arrangement will result in the removal of the child from their legal custody if any of the conditions listed in divisions (A)(5)(a) to (c) of this section are found to exist, and the summons served on the parents contains a full explanation of their right to be represented by counsel and to have counsel appointed pursuant to Chapter 120. of the Revised Code if they are indigent.

(Emphasis added.) *See also* R.C. 2151.27(C) ("If the complainant in a case in which a child is alleged to be an abused, neglected, or dependent child desires * * * the placement of the child in a planned permanent living arrangement, the complaint shall contain a prayer specifically requesting * * * the placement of the child in a planned permanent living arrangement.").

{¶ 54} MCCS's neglect and dependency complaint for H.C.S. requested "a preferred disposition of Temporary Custody to MCCS." MCCS did not request PPLA in its complaint, and it received temporary custody of H.C.S. R.C. 2151.353(F)(2) allows the agency to file a motion to modify or terminate any order of disposition previously issued pursuant to R.C. 2151.353(A), and the court must hold a hearing "as if the hearing were the original disposition hearing." R.C. 2151.353(F)(2). However, I read nothing in R.C. 2151.353(F)(2) that permits the juvenile court to grant a disposition pursuant to a motion under R.C. 2151.353(F)(2) that could not have been granted at the original disposition hearing. In light of R.C. 2151.353(C), the juvenile court could not grant a

PPLA under R.C. 2151.353(A)(5) with the complaint in this case. Accordingly, the juvenile court likewise could not grant a PPLA pursuant to a motion filed under R.C. 2151.353(F)(2) after the original disposition of temporary custody of H.C.S. to MCCS. Under these circumstances, R.C. 2151.415 provided the appropriate statutory authorization for MCCS's motion for PPLA.

{¶ 55} The magistrate found that a PPLA was in H.C.S.'s best interest and that she was at least 16 years old. The magistrate further found that H.C.S. had been counseled on the permanent placement options available, and was unwilling to accept or unable to adapt to a permanent placement. However, the magistrate did not make any finding that H.C.S. was in an agency program preparing for independent living. In the absence of such a finding, the magistrate did not make all of the required statutory findings for PPLA under R.C. 2151.415. In my view, the grant of MCCS's motion for a PPLA without making all of the required statutory findings constitutes plain error. *See* R.C. 2151.415(C)(1) (stating that a court "shall not place a child in a planned permanent living arrangement" unless it makes specific statutory findings by clear and convincing evidence). Accordingly, I dissent.


Copies sent to:

Mathias H. Heck
Sarah E. Hutnik
Benjamin W. Ellis
Gary C. Schaengold
Catherine McCarthy, GAL
J.S. (Father)
P.S. (Maternal Aunt)
Hon. Anthony Capizzi